# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

TOMMY JACKSON,            )
                               )
        Petitioner,        )
                               )
      vs.                 )         **Case No. 4:08CV650MLM**
                               )
TROY STEELE,              )
                               )
        Respondent.     )

## MEMORANDUM OPINION

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed by Petitioner Tommy Jackson ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7. Petitioner filed a Reply. Doc. 13. Also before the court is the Motion for Discovery and to Expand the Record filed by Petitioner. Doc. 14. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

## I.
## MOTION FOR DISCOVERY AND TO EXPAND THE RECORD[1]

First, Petitioner requests that the record be expanded to include the Indictment and the State's witness endorsement list. The Indictment and the witness endorsement list are included in the record before this court. Resp. Ex. C at 1, 12.

Second, Petitioner seeks to expand the record to include police reports and the arrest warrant. One of the police reports which Petitioner seeks to include in the record is the statement of Betty Beverly who testified at Petitioner's trial for the State. The other police report is the statement of

---

[1] Petitioner previously filed a Motion to Expand the Record, which Motion the court granted. Doc. 12.

Brenda Moore whom Petitioner suggests was smoking crack cocaine with the victim prior to his murder. The record reflects that the police reports which Petitioner seeks to include in the record were produced by the State to Petitioner pursuant to pre-trial discovery. Resp. Ex. C at 14.

Third, Petitioner seeks discovery to challenge the credibility of witnesses at trial. In regard to such a request the Eighth Circuit held in Newton v. Kemna, 354 F.3d 776, 783 (8th Cir. 2004), that:

> "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). Rule 6(a), however, provides that "[a petitioner] shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of [her] discretion and for good cause shown grants leave to do so, but not otherwise." The Supreme Court has developed a general approach to the question of whether a petitioner has established "good cause" sufficient to warrant discovery under Rule 6(a). See Bracy, 520 U.S. at 904-09, 117 S.Ct. 1793. Under Bracy, a habeas court must identify the "essential elements" of the petitioner's substantive claim, id. at 904, 117 S.Ct. 1793, evaluate whether " 'specific allegations ... show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief,'" id. at 908-09, 117 S.Ct. 1793 (quoting Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)), and, if the petitioner has made such allegations, "'provide the necessary facilities and procedures for an adequate inquiry,'" id.

Petitioner has failed to suggest the relevance of discovery to the issues which he raises in his § 2254 Petition and has failed to establish that if the facts are further developed he will be entitled to habeas relief. See Newton, 354 F.3d at 783; Byrd v. Armontroud, 686 F.Supp. 743, 784-86 (E.D. Mo. 1988) (denying habeas petitioner's request for discovery because the court did not believe that "the information contained in the discovery would establish" the petitioner's claims). As such, the court finds that Petitioner has failed to show good cause why discovery is necessary in the matter under consideration. See Newton, 354 F.3d at 783. The court finds, therefore, that Petitioner's Motion for Discovery and to Expand the Record should be denied.

# II.
# BACKGROUND

On December 1, 1997, Petitioner was charged by Substitute Information in Lieu of Indictment as follows: Count I, the felony of Murder in the First Degree in that on September 9, 1996, in the City of St. Louis, Missouri, Petitioner, "after deliberation, knowingly killed Elmund Davis by stabbing him"; and Count II, the felony of armed criminal action in that on September 9, 1996, in the City of St. Louis, Missouri, Petitioner committed the felony of Murder in the First Degree charged in Count I, "by, with and through the use assistance and aid of a dangerous instrument." Petitioner was further charged with being a prior and persistent offender in that: (1) on May 15, 1985, Petitioner pled guilty to the felony of stealing from a person, and (2) on June 26, 1987, Petitioner pled guilty to the felony of possession of a controlled substance. Resp. Ex. C at 18-19.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:

[O]n September 9, 1996, [Petitioner] went looking for Victim with a butcher knife. When [Petitioner] found Victim, a fight ensued. As the fight continued, Maurice Brown ran out of [Petitioner's] house with a screwdriver and intervened. Brown struck Victim in the face with the screwdriver, dropped it, and began to hit Victim with his fists. [Petitioner] picked up the screwdriver and stabbed Victim in the chest. After Victim fell to the ground, both men began to kick him. Victim's godmother, Betty Beverly, saw this and asked them to stop. [Petitioner] cursed at her, telling her to shut up or he would do the same to her. Victim died later that night from the stab wound.

Resp. Ex. D at 2.[2]

---

[2]      In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590

Betty Beverley, James Crawford, Jermaine Maze and Davida Henderson, all of whom were allegedly eyewitnesses, testified at Petitioner's trial. Petitioner also testified. The Missouri appellate court further described the testimony at Petitioner's trial as follows:

> According to Betty Beverley, on September 9, 1996, she observed [Petitioner] walking past her house with a butcher knife and calling out for her godson, Victim. Subsequently, she saw [Petitioner] and Victim fighting in the street. Betty Beverley entered her house and called the police and paramedics. During this time, she could not see the fight. [Petitioner] threw away the knife during the fight. Betty Beverley did not see [Petitioner] stab Victim. Betty Beverly came back outside. Victim fell to the ground. [Petitioner] and another man began kicking him. Betty Beverly went to Victim's assistance and told [Petitioner] to stop kicking Victim and to leave him alone. A young man and a young lady retrieved the knife and took it into [Petitioner's] house.

> James Crawford testified that he saw [Petitioner] and Victim fighting with their fists in the street. At that time, neither [Petitioner] nor Victim had anything in their hands. Victim was winning the fight. A man came out of [Petitioner's] house and "upper-cutted" Victim with a screwdriver. The man dropped the screwdriver and started hitting Victim. [Petitioner] then picked up the screwdriver and stuck it into Victim's chest. [Petitioner] and the man kicked Victim as he lay on the ground. An individual named William (Bill) Baker ran up to the fight and swung at the man. [Petitioner] and the man then chased Bill Baker down the street. [Petitioner] and the man returned and continued to kick Victim.

> Jermaine Maze (Maze) testified that he saw the fight between [Petitioner] and Victim. While the two men were fighting, another man came out of [Petitioner's] house with a screwdriver and stabbed Victim across his head with it. Maze covered his eyes when he saw this. When Maze opened his eyes, [Petitioner] had the screwdriver. [Petitioner] stabbed Victim in the chest with the screwdriver. Victim fell and the two men kicked and punched him. Bill Baker ran up to the fight. The man

---

(8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

who came out of [Petitioner's] house chased Bill with the screwdriver and [Petitioner] followed him.

Davida Henderson testified that she observed [Petitioner] and Victim fighting. [Petitioner] had a knife during the fight. He threw the knife during the fight. A man from [Petitioner's] house brought a screwdriver and joined the fight. [Petitioner] picked up the screwdriver and stabbed Victim. Victim fell to the ground and [Petitioner] and the man kicked Victim. Bill Baker ran up to the fight and hit the man. [Petitioner] and the man chased Bill up the street, then returned and continued kicking Victim. [Petitioner's] girlfriend Sheila took the knife that was thrown.

[Petitioner] testified on his own behalf. According to [Petitioner's] trial testimony, he approached Victim, who was holding an ice pick, to ask him to repay five dollars [Petitioner] had loaned him. Victim mumbled something and hit [Petitioner], striking his right eye. Victim's girlfriend, Brenda Moore (Moore), attempted to stop Victim from attacking [Petitioner], but Victim pushed her away. Victim then tried to bend over and retrieve the ice pick, which he had dropped. [Petitioner] grabbed the ice pick before Victim could reach it, and then backed into the street. Victim and Moore followed [Petitioner]. Victim tried to grab the ice pick from [Petitioner]. At the same time, Victim tried to hit [Petitioner]. [Petitioner] noticed Moore had a butcher knife in her hand. [Petitioner] "pushed into" Victim with the ice pick.

[Petitioner] further testified that he did not stab Victim with a screwdriver; Victim's chest wound was inflicted by the ice pick. [Petitioner] did not want to hurt Victim with the ice pick and does not remember stabbing him. Moore had the knife, so [Petitioner] felt he had to keep the ice pick in his possession or she would stab him.

Victim and Moore followed [Petitioner] to his home approximately half a block away. Another individual, Bill Baker, approached and swung at [Petitioner]. [Petitioner's] brother Maurice then came out of [Petitioner's] house.

Victim continued to try to attack [Petitioner], who was just holding the ice pick down to signal to Victim that [Petitioner] did not want to use it. Although [Petitioner] wanted to enter his house, Moore, who had the knife, was blocking his path, so [Petitioner] backed up to the other side of the curb. Bill Baker grabbed [Petitioner] by his arms from behind and shook the ice pick out of [Petitioner's] grip. Maurice ran to fight Victim. When [Petitioner] swung at Bill Baker, Bill Baker ran away.

[Petitioner] went into his house, changed his shoes and went to his uncle's house, where he hid in the basement.

When a police officer later questioned [Petitioner] about Victim's stabbing and informed [Petitioner] that Victim was stabbed with a screwdriver, [Petitioner] told the

officer that Victim must have stabbed himself while trying to stab [Petitioner] because [Petitioner] never had a screwdriver.

During cross-examination, the State asked [Petitioner] if he had told the police that he had stabbed Victim. [Petitioner] replied:

> You know what? Right now today, I have repeatedly said that if [Victim] was ever injured, [Victim] was injured when [Victim] attacked me and with the ice pick that I pushed out at him. And I defended myself.
>
> If [Victim] was stabbed [], then yes, I am the one who injured him. But it was because of his actions that he was stabbed. And if your terminology you want to say I stabbed this man, because I never could understand the stabbing. The stabbings means you go and you stab somebody. I mean what does that mean? What does it mean when you say stab?

Resp. Ex. H at 2-5.

As also stated by the Missouri appellate court, when the State "tried to elicit from Petitioner whether he stuck the ice pick into Victim's chest by accident or in self-defense," Petitioner testified that he stuck the victim "because for one reason [he] didn't know the ice pick had stuck him"; that he "didn't intend" to do what he was accused of doing; that he was "defending [him]self, but that [he] had to defend [him]self with the ice pick in [his] hand"; that if he could have gotten rid of the ice pick, he "would have done that"; that "under the circumstances that his girlfriend had a butcher knife, and [he] was in fear of [his] life, then [Petitioner] had to push [Victim] off with that object in [Petitioner's] hand"; and that witnesses, including Ms. Beverly, who said that a person from Petitioner's house picked up the knife and went back into Petitioner's house, were lying. Resp. Ex. H at 5-6.

At the hearing in Petitioner's post-conviction relief proceedings Dr. Michael Graham, a forensic pathologist and the Chief Medical Examiner for the City of St. Louis, testified that he examined the victim's body. Dr. Graham opined that the victim's fatal wound could have been

caused by either the screwdriver admitted into evidence during Petitioner's trial or by an ice pick, also known as an "awl." Resp. Ex. D at 7. Detective Clifford Harper also testified and identified police reports he had prepared in connection with the victim's stabbing. One of the reports said he had delivered an ice pick, a screwdriver, and a t-shirt to the St. Louis crime lab in connection with the victim's death. Resp. Ex. D at 7. A crime lab supervisor testified that, upon their examination, he did not detect any blood on either the ice pick or the screwdriver and that the ice pick was covered in rust. Resp. Ex. D at 7.

Petitioner was convicted of Murder in the Second Degree and of armed criminal action in connection with Murder in the Second Degree. Resp. Ex. C at 65-66. The court found that Petitioner was a prior offender and sentenced him to concurrent terms of twenty-five years and ten years. Resp. Ex. C at 80-81. Petitioner filed a direct appeal with the Missouri appellate court. Resp. Ex. A. The Missouri appellate court affirmed Petitioner's conviction. Resp. Ex. D. Petitioner filed a pro se post-conviction relief motion. Resp. Ex. G at 5-24. The court appointed counsel who filed an amended motion. Resp. Ex. G at 25-85. The motion court denied Petitioner post-conviction relief. Resp. Ex. G at 160-70. Petitioner filed an appeal of the motion court's denial of post-conviction relief. Resp. Ex. E. The Missouri appellate court affirmed the decision of the motion court. Resp. Ex. H.

Petitioner filed his § 2254 Petition in which he raises the following grounds for relief:

**(1)** Petitioner received ineffective assistance of counsel because counsel failed to introduce into evidence a photograph of Petitioner's bruised eye;

**(2)** Petitioner received ineffective assistance of counsel because counsel failed to introduce into evidence an ice pick in support of Petitioner's theory that he acted in lawful self-defense;

**(3)** Petitioner received ineffective assistance of counsel because counsel failed to adduce expert testimony that the victim's fatal chest wound could have been caused by the ice pick seized by the police;

**(4)** Petitioner received ineffective assistance of counsel because counsel failed to locate, interview, and call as a witness Detective Clifford Harper to establish that Detective Harper had seized an ice pick;

**(5)** Petitioner received ineffective assistance of counsel because counsel failed to locate, interview, and call as a witness Petitioner's brother, Leonard Brown;

**(6)** Petitioner received ineffective assistance of counsel because counsel failed to call Vernice Robinson and Ruth Green as witnesses;

**(7)** Petitioner received ineffective assistance of counsel because trial counsel failed to object during cross examination of Petitioner and failed to object during the prosecutor's closing argument;

**(8)** Petitioner received ineffective assistance of counsel because counsel failed to object to Jury Instruction No. 8, defining self-defense and to tender an instruction referencing imminent threat from other individuals;

**(9)** The trial court erred in submitting Instruction No. 6 to the jury because this instruction omitted reference to the victim's name in the definition of "sudden passion";

**(10)** The trial court erred in submitting Instruction No. 7 to the jury because this instruction omitted a definition of "serious physical injury."

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo,</u> 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

In the appeal of his post-conviction relief motion Petitioner incorporated the issues raised in Grounds 1 through 4 and 8 into his first point. The Missouri appellate court noted that Petitioner's first point was defective according to State law "in that each of its subpoints constitute[ed] a separate point." Despite this deficiency, the Missouri appellate court considered Petitioner's first point on appeal on its merits. Resp. Ex. H at 11 n.3. Petitioner raised other Grounds for relief before the Missouri appellate court.[3] As such, this court finds that Petitioner has not procedurally defaulted any

---

[3] Petitioner raised the issues of Grounds 9 and 10 before the Missouri appellate court but because he did not raise these issues at trial as required by Missouri law the Missouri appellate court found that Petitioner had waived appellate review of these issues. Nonetheless the Missouri appellate court considered the issues of Petitioner's Grounds 9 and 10 pursuant to plain error.

Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in Hornbuckle v. Groose that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. In Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. However, in Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that

grounds for relief which he raises before this court and that he has exhausted his State remedies. The court further finds that Petitioner's §2254 Petition is timely filed.

<strong>IV.</strong><br><strong>STANDARD OF REVIEW</strong>

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

In Williams v. Taylor, 529 U.S. 362, 412 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

---

the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's claims are without substantive merit, the court need not determine whether Petitioner's Grounds 9 and 10 are procedurally barred. See also James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

(1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001).

## V.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the

Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after

it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

# VI.
# DISCUSSION

**Ground 1 - Petitioner received ineffective assistance of counsel because counsel failed to introduce into evidence a photograph of Petitioner's bruised eye;**

**Ground 2 - Petitioner received ineffective assistance of counsel because counsel failed to introduce into evidence an ice pick in support of Petitioner's theory that he acted in lawful self-defense;**

**Ground 3 - Petitioner received ineffective assistance of counsel because counsel failed to adduce expert testimony that the victim's fatal chest wound could have been caused by the ice pick seized by the police;**

**Ground 4 - Petitioner received ineffective assistance of counsel because counsel failed to locate, interview, and call as a witness Detective Clifford Harper to establish that Detective Harper had seized an ice pick:**

In support of Grounds 1-4 Petitioner contends that he "gave an explanation of an accidental stabbing" of the victim; that Petitioner acted in fear of his life; that the photograph of Petitioner's swollen eye and the ice pick would have supported his theory of self-defense; that, due to counsel's inadequate representation, the jury did not believe Petitioner; that it would have been easy to call Detective Harper to "track down the missing ice pick"; that the conduct of Petitioner's counsel mislead the jury "that Petitioner was calling the screwdriver an ice pick and that no ice pick existed to corroborate Petitioner's self-defense claim"; that had Dr. Graham, the expert, been asked about the ice pick, it would have supported Petitioner's theory; that it was essential to Petitioner's case that

the ice pick be introduced into evidence as the "instrument Petitioner used in self-defense"; and that the ice pick, Dr. Graham, and Detective Harper's testimony together with Petitioner's testimony "would have produc[ed] an effect stronger than any part by itself and together substantially been devastating to the State's case of murder with a screwdriver." Doc. 13 at 4-24.

Upon considering Petitioner's claims of ineffective assistance of counsel, the Missouri appellate court considered that to establish such a claim Petitioner was required to "show both that: (1) Counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and 2) [Petitioner's] defense was prejudiced by Counsel's deficient performance." Resp. Ex. H at 11 (citing Helmig v. State, 42 S.W.3d 658, 667 (Mo. Ct. App. 2001)).

As stated above Petitioner raised the issues of Grounds 1 through 4 as part his first point before the Missouri appellate court. This first point stated claims of ineffective assistance of counsel relating to Petitioner's theory of self-defense. Upon addressing the issues of Petitioner's Grounds 1 through 4 as well as Ground 8[4] the Missouri appellate court considered Petitioner's testimony at the post-conviction hearing including his testifying that: the victim hit Petitioner in the eye and dropped the ice pick he had been holding; Petitioner picked up the ice pick and used it in self-defense against the victim; Petitioner thought the victim was going to grab him so that the victim's girlfriend could stab him with a butcher knife; the victim was injured with the ice pick when Petitioner punched him in an effort to keep the victim away from him; and Petitioner told counsel about the ice pick. The appellate court further considered that on the day of Petitioner's trial the State told Petitioner's counsel that the ice pick was lost and that counsel testified that "because of the instruments' similarity, whether Victim was stabbed with an ice pick or a screwdriver did not factor into any of his decisions concerning trial strategy." Resp. Ex. H at 8-9.

---

[4] The court will address the merits of Ground 8 separately.

In particular, upon addressing the issues of Petitioner's Grounds 1 through 4, as well as Ground 8, the Missouri appellate court considered that these claims relate to Petitioner's assertion that he was acting in self-defense when the he stabbed the victim and concluded that Petitioner was "unable to demonstrate that his defense was prejudiced by any alleged deficient performance by Counsel." The appellate court further found that Petitioner's claim that he acted in self-defense "was inconsistent with [Petitioner's] trial testimony that he did not intentionally stab Victim and that he was not even aware that the instrument he held had entered Victim's body. 'Missouri court's do not recognize a claim of accidental self-defense.'" Resp. Ex. H at 13 (quoting State v. Miller, 981 S.W.2d 623, 632 (Mo. Ct. App. 1998)). The Missouri appellate court further held:

> A defendant claiming self-defense acknowledges intentionally inflicting injury or death on another person while asserting that his action was necessary due to the threat of great bodily harm or death t o himsel f. Id. I n contra st, a claim o f accide n t involv es an uninte ntional a c t . I d . Despit e the incons istenc y of t h e s e t w o defens e s , proper

evidence may entitle a defendant to have both submitted to the jury; however, such evidence cannot be provided by the defendant's testimony alone. <u>Id</u>.

      At trial, [Petitioner] stated that he did not mean to hurt Victim with the ice pick and that he did not even remember stabbing Victim. He repeatedly testified that he did not intend to stick Victim. [Petitioner's] trial testimony amounted to a claim of accidental self-defense and only his testimony provided the basis for these inconsistent defenses. Since the evidence failed to indicate that the use of deadly force was justified, whether Victim's wound was inflicted by a screwdriver or an awl was irrelevant. Similarly, the photograph depicting [Petitioner's] swollen [right] eye was irrelevant, as it was undisputed that [Petitioner] and Victim engaged in a fist fight and the photograph was not probative that the use of deadly force was justified. Furthermore, given [Petitioner's] testimony that any stabbing was unintended, [Petitioner] did not suffer prejudice from Counsel's alleged failure to object and tender a self-defense instruction referencing imminent threat from other individuals.

Resp. Ex. H at 13.

Pursuant to Williams the court will consider federal law applicable to Petitioner's Grounds 1 through 4. As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential; that all the circumstances must be considered when determining whether a habeas petitioner received ineffective assistance of counsel; that there is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance; and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89. Indeed, counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). Additionally, the decision whether to introduce evidence may be a matter of trial strategy. See Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made [by trial counsel] after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Id. at 1556 (citation omitted).

The Eighth Circuit held in Marcrum v. Lubbers, 509 F.3d 489, 502-505 (8th Cir. 2007):

> The Supreme Court has held in several cases that the habeas court's commission is not to invent strategic reasons or accept any strategy counsel could have followed, without regard to what actually happened; when a petitioner shows that counsel's actions actually resulted from inattention or neglect, rather than reasoned judgment, the petitioner has rebutted the presumption of strategy, even if the government offers a possible strategic reason that could have, but did not, prompt counsel's course of action. Rompilla v. Beard, 545 U.S. 374, 395-96, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (O'Connor, J., concurring); Wiggins v. Smith, 539 U.S. 510, 526-27, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Kimmelman, 477 U.S. at 385.

> ...

> Nevertheless, the Supreme Court has held on three occasions that state courts' applications of Strickland were unreasonable under the AEDPA and that prisoners were entitled to the writ of habeas corpus because they received ineffective assistance of counsel. Rompilla, 545 U.S. at 380, 393; Wiggins, 539 U.S. at 520, 538; Williams, 529 U.S. at 399; ... . In each of these three cases, counsel had failed to present important aspects of the personal history of the defendant, and the failure had resulted from inadequate trial preparation. Rompilla, 545 U.S. at 389-92 (failure

to look at file for prior conviction which showed parental abuse and alcoholism and would have pointed to defendant's organic brain damage); Wiggins, 539 U.S. at 524-25 (counsel failed to investigate or present evidence of childhood abuse); Williams, 529 U.S. at 395-97 (counsel failed to uncover records describing defendant's nightmarish childhood and borderline retardation). ... . This string of cases shows that the AEDPA does not relieve us of the duty to scrutinize counsel's omissions and the state courts' assessments of counsel's omissions.

In regard to witness selection, the Eighth Circuit has stated that such decisions "are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (internal citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses may be a matter of trial strategy. Hall, 296 F.3d at 694; Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994). Trial counsel, however, is not required to call experts, provided that counsel has adequately investigated the facts surrounding a defendant's case. See id. at 1557. As with the decision to present evidence "[s]trategic decisions [regarding choice of witnesses] 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." Strickland, 466 U.S. at 590.

Upon addressing the issues of Petitioner's Grounds 1 through 4 the Missouri appellate court considered the evidence and testimony and concluded that whether Petitioner used an ice pick or a screwdriver was irrelevant to his claim of self-defense; that the photograph depicting Petitioner's swollen eye was not probative of whether deadly force was justified; and that, therefore, Petitioner was not prejudiced by counsel's failure to introduce evidence of the ice pick, by counsel's failure to introduce the photograph of Petitioner's eye, by counsel's failure to call an expert regarding the type

18

of instrument that caused the victim's wound, or by counsel's failure to call Detective Harper as a witness. This reasoning of the Missouri appellate court in which it concluded that Petitioner was not entitled to post-conviction relief on the basis of the issues raised in Grounds 1 through 4 is consistent with federal law. Further, it is not contrary to federal law and is a reasonable application of federal law. See Strickland, 466 U.S. at 688-89; Marcrum, 509 F.3d at 502-505; Hall, 296 F.3d at 694; Battle, 19 F.3d at 1556. Moreover, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case in regard to Grounds 1 through 4. See 28 U.S.C. §2254(d)(2). As such, the court finds that Petitioner's Grounds 1 through 4 are without merit and that habeas relief on their basis should be denied.

**Ground 5 - Petitioner received ineffective assistance of counsel because counsel failed to locate, interview, and call as a witness Petitioner's brother, Leonard Brown;**

**Ground 6 - Petitioner received ineffective assistance of counsel because counsel failed to call Vernice Robinson and Ruth Green as witnesses:**

In Petitioner's fifth and sixth grounds for habeas relief he challenges his trial counsel's failure to call and investigate witnesses. In support of Grounds 5 and 6 Petitioner contends that Leonard Brown's testimony would have rehabilitated Maurice Brown's testimony; that Leonard Brown would have been available and willing to testify; that Ms. Robinson and Ms. Green would have testified that "the State's witness, Ms. Beverly, told them before trial that when she came to court, she was going to say everything and do everything she could to make sure that Petitioner got convicted"; and that Leonard Brown's, Ms. Robinson's, and Ms. Green's testimony would have shown that other State's witnesses were not telling the truth. Doc. 13 at 24-33.

As set forth above, prior to considering Petitioner's claims of ineffective assistance of counsel the Missouri appellate court considered that Petitioner was required to establish both that

counsel's performance was unreasonable and that he was prejudiced by counsel's performance.

Upon denying Petitioner post-conviction relief on the issues raised in Grounds 5 and 6, the Missouri

appellate court held:

> Generally, such decisions are a matter of trial strategy and do not support a claim of ineffective assistance of counsel. Helmig v. State, 42 S.W.3d 658, 667 (Mo. App. E.D. 2001). To establish a claim of ineffective assistance for failure to locate and call witnesses, [Petitioner] must show that: 1) Counsel knew or should have known of these witnesses, 2) the witnesses could have been located through reasonable investigation 3) the witnesses would have testified if called, and 4) the witnesses' testimony would have provided [Petitioner] a viable defense. Id. Here, [Petitioner] claims that these uncalled witnesses, Leonard Brown, Robinson, and Green, would have supplied testimony that would either rehabilitate or impeach the credibility of witnesses who testified at trial.

> At the evidentiary hearing, Leonard Brown, [Petitioner's] brother, testified that after he learned that police detectives were looking for him, he contacted them and presented himself for questioning. The police questioned Leonard Brown concerning the stabbing incident and asked him to take a lie detector test after he stated that he was out of town when Victim was stabbed. He failed the test and the police arrested him. Leonard testified that he was later picked out of a lineup and told he was under arrest for Victim's murder.

> [Petitioner] claims that testimony showing the police took Leonard Brown rather than Maurice Brown in custody would have enabled the jurors to understand that Maurice Brown was not a man who ran from the police, and that Maurice Brown was not lying when he testified he had not been questioned or looked for by police in connection with Victim's death. We fail to see how such testimony would have provided [Petitioner] with a viable defense. [Petitioner] avers that Leonard Brown's testimony would have rehabilitated Maurice Brown's credibility. Even assuming that such testimony would have done so, however, [Petitioner] cannot show that such rehabilitation would have provided [Petitioner] a viable defense. During [Petitioner's] trial, Maurice Brown testified that he did not see Victim being stabbed or see any weapon being used against Victim. Maurice Brown further testified that when he came upon the scene, the fight between Victim and [Petitioner] had concluded and neither Victim or [Petitioner] had a weapon.

> Even if jurors found both Leonard Brown and Maurice Brown credible, neither man was present when [Petitioner] stabbed Victim and therefore could not have provided [Petitioner] a defense. It was not defective assistance of counsel to decide not to call a witness whose testimony did not support [Petitioner's] theory of self-defense. Helmig, 42 S.W.3d at 667, 670.

[Petitioner] also claims Counsel was ineffective for failing to call Vernice Robinson and Ruth Green as a witnesses during [Petitioner's] trial. During the evidentiary hearing, Vernice Robinson, [Petitioner's] mother, and Ruth Green, [Petitioner's] grandmother, testified. Vernice Robinson said that Betty Beverly, Victim's godmother, told her that she was going to make sure that [Petitioner] got convicted for Victim's murder. Betty Beverly told Vernice Robinson that she would "say everything and do everything she could to make sure that he got convicted." Ruth Green testified that she also heard Betty Beverly say that "she was going to do everything she can to get [Petitioner] was cured with his black [ass] put away."

[Petitioner] claims the testimony of these two ladies would have established a viable defense "because it would have weakened the State's case by impeaching the credibility of one of the witnesses accusing [Petitioner] of not using lawful self-defense."

Generally trial counsel is not ineffective for failing to present evidence of an impeaching nature, and impeaching testimony should be confined to the reputation of the witness for truth and veracity. Keuhne v. State, 107 S.W.3d 285, 294 (Mo. App. W.D. 2003). However, a specific act of misconduct can be probative if it demonstrates a witness's bias. Id. ... . The evidentiary hearing testimony of Vernice Robinson and Ruth Green did not concern Betty Beverly's reputation for truth and veracity. Nor did Betty Beverly's alleged comments concerning [Petitioner] demonstrate a bias against [Petitioner] that would motivate Betty Beverly to fabricate a story to incriminate [Petitioner]. We disagree with [Petitioner's] assertion that the testimony of Vernice Robinson and Ruth Green would have shown that Betty Beverly was testifying out of revenge for her godson's death instead of a desire to tell the truth. According to these witnesses, Betty Beverly made these statements the same day that Victim was stabbed. These statements, taken at face value, do not prove that Betty Beverly intended to lie about the event she had witnessed; these statements, just as easily, establish that Betty Beverly intended to do whatever she could to ensure the man she believed killed Victim was convicted of the crime.

Moreover, even if these witnesses had been called during [Petitioner's] trial to impeach Betty Beverly, their testimony would not have provided [Petitioner] with a viable defense to Victim's stabbing or have changed his trial's outcome. See Keuhne, 107 S.W.3d at 293 (movant has burden to establish impeachment would have provided him with defense or would have changed trial outcome). Significantly, Betty Beverly did not even witness the stabbing. However, several other State witnesses did, and their testimony was sufficient evidence to establish that [Petitioner] did not stab Victim in lawful self-defense. Failure to call impeachment witnesses does not warrant post-conviction relief where alleged facts, even if true, do not establish a defense. State v. Daugherty, 906 S.W.2d 812, 818 (Mo. App. E.D. 1995). Counsel's decision not to impeach Betty Beverly with the testimony of these witnesses did not constitute ineffective assistance.

Resp. Ex. H at 14-17.

Pursuant to <u>Williams</u> the court will consider federal law applicable to Petitioner's Grounds 5 and 6. As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. <u>Strickland</u>, 466 U.S. at 688-89. The court has further set forth above federal law applicable to a claim that counsel failed to produce exculpatory evidence and that counsel failed to call witnesses. <u>Kenley</u>, 937 F.2d at 1304; <u>Hall</u>, 296 F.3d at 694; <u>Battle</u>, 19 F.3d at 1556.

Further, the Eighth Circuit has held, in regard to the duty of counsel to investigate, that:

> Supreme Court precedent shows that counsel's decisions resulting from failure to investigate are not entitled to the presumption of competent performance, whereas decisions about what to do with the results of investigation are strategic decisions that are virtually immune to second-guessing by habeas courts. <u>E.g.</u>, <u>Wiggins</u>, 539 U.S. at 522-23, 527-28, 123 S.Ct. 2527 (decision avoided focusing on counsel's decision of what evidence to present, which was strategic, but found deficient performance because of inadequate investigation, which shaped strategic decision).

<u>Marcum</u>, 508 F.3d at 506.

In regard to investigation, trial counsel's performance must be judged "on facts as they appeared to him at the time of trial, not on whether ... in retrospect the action would have been advantageous or not." <u>Id.</u> at 507 (quoting <u>Kimmelman</u>, 477 U.S. at 386-87).

Upon considering whether counsel was ineffective for failing to call Leonard Brown, Vernice Robinson, and Ruth Green the Missouri appellate court considered the evidence and testimony of record including Petitioner's theory of self-defense and concluded that neither Leonard Brown, Ms. Robinson, nor Ms. Green would have established a defense for Petitioner; that they would not have discredited other witness testimony; and that, therefore, Petitioner was not prejudiced by counsel's failure to call these witnesses. <u>See</u> <u>Strickland</u>, 466 U.S. at 688-89;<u>Marcum</u>, 508 F.3d at 506; <u>Kenley</u>, 937 F.2d at 1304; <u>Hall</u>, 296 F.3d at 694; <u>Battle</u>, 19 F.3d at 1556. As such, the court finds that the decision of the Missouri appellate court in regard to the issues raised by Petitioner in

Grounds 5 and 6 is not contrary to federal law and that it is a reasonable interpretation of federal law. The court further finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case in regard to Grounds 5 and 6. See 28 U.S.C. § 2254(d)(2). As such, the court finds that Petitioner's Grounds 5 and 6 are without merit and that habeas relief on their basis should be denied.

**Ground 7 - Petitioner received ineffective assistance of counsel because counsel failed to object during cross examination of Petitioner and failed to object during the prosecutor's closing argument**:

In support of Ground 7 Petitioner argues that the "prosecutor leaped all over counsel's failure to show jurors that the witnesses were liars and took full advantage by asking Petitioner" whether witnesses had lied and by arguing this in closing argument. Doc. 13 at 34-35.

During the prosecutor's cross-examination of Petitioner, the following exchange occurred:

[Prosecutor:] All right. Now I forgot where we were. Okay. Let's go on to something else then. Oh, it was about you hearing Miss Betty say that you had the knife and that people walked in, picked it up and took it into your house?

[Petitioner:] Yes. Yes.

[Prosecutor:] And there were three of four people who said that; right?

[Petitioner:] Uh-huh.

[Prosecutor:] You heard them say it to this jury. Are they lying?

[Petitioner:] Yes.

[Prosecutor:] The twelve-year-old, the sixteen-year-old, we won't mention Miss Betty's age, Miss Parker, everyone there is lying about what you did and what you said; is that correct?

[Petitioner:] Yes, sir.

Resp. Ex. I at 345-346.

During closing the prosecutor stated: "Now the defense is saying: Hey, those people are lying, not only those two, but everybody else is lying. These people are liars; not mistaken, but out and out liars." Id. at 389. Petitioner contends that his trial counsel rendered ineffective assistance by failing to object in these two instances.

Upon addressing the issue of Petitioner's Ground 7 the Missouri appellate court held:

> [Petitioner] argues that he was prejudiced by Counsel's failure to object when the State asked [Petitioner] if certain State witnesses were lying and when the State argued in closing that [Petitioner] was claiming that everybody else is lying.

> "The failure to object to evidence is not sufficient in and of itself to constitute ineffective assistance of counsel; movant must show that the failure to objet resulted in substantial deprivation of his right to fair trial." (citations omitted).

> Although we agree that an attorney should not invite a witness to comment on another witness's veracity, we conclude that [Petitioner] has failed to demonstrate that Counsel's failure to object to the State's questions or comments during closing resulted in prejudice sufficient to satisfy the requirements of Strickland v. Washington, 466 U.S. 668, 693 (1984) (to prevail on claim of ineffective assistance of counsel, movant must demonstrate that counsel's performance was deficient and that movant's defense was prejudiced by counsel's poor performance; to show prejudice, movant must show reasonable probability that, but for counsel's errors, result of trial would have been different).

Pursuant to Williams the court will consider federal law applicable to Petitioner's Ground 7. In Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)), the United States Supreme Court held, in response to claims of constitutional error which focused on remarks of the prosecutor during closing argument, that "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" The Court noted that the habeas petitioner in Donnelly claimed only that the prosecutor's remarks by themselves so infected his trial with unfairness as to make the resulting conviction a denial of due process. The Supreme Court found that although the prosecutor's allegedly improper remark in

Donnelly was ambiguous, the remark did not render the habeas petitioner's trial so fundamentally unfair as to deny him due process. See id. at 645.

Additionally, the Eighth Circuit holds that a habeas petitioner claiming that he was denied due process as a result of the prosecutor's remarks must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered the petitioner's entire trial fundamentally unfair. See Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). A petitioner meets this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have rendered a different verdict. See Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987).

The court has set forth above federal law applicable to claims of ineffective assistance of counsel. Additionally, upon addressing the issue of whether a trial attorney's failure to object to allegedly objectionable argument by the prosecutor, the Eighth Circuit holds that Strickland requires that the habeas petitioner show that the verdict would have been different if the prosecutor had not engaged in the behavior. The habeas petitioner must demonstrate that "but for" counsel's professional errors, the result would have been different. See Kellogg, 176 F.3d at 452.

Upon addressing the issue of Petitioner's Ground 7 the Missouri appellate court considered that the prosecutor should not have asked Petitioner to comment on the veracity of witnesses but concluded that Petitioner did not establish that he was prejudiced by the failure of his counsel to object to such questioning or the failure of his counsel to object to the prosecutor's closing argument in this regard. The Missouri appellate court further considered that because Petitioner had not established prejudice as required by Strickland, he was not entitled to post-conviction relief as alleged in Ground 7. In agreement with the State appellate court, this court notes that it cannot be said that the prosecutor's argument was so "gross, conspicuously prejudicial or of such import

that the trial was fatally infected." Culkin, 45 F.3d at 1235. The court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 7 is not contrary to federal law and that it is reasonable application of federal law. See Kellogg, 176 F.3d at 452; Culkin, 45 F.3d at 1235. The court further finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case in regard to Ground 7. See 28 U.S.C. §2254(d)(2). As such, the court finds that Petitioner's Ground 7 is without merit and that habeas relief on its basis should be denied.

**Ground 8 - Petitioner received ineffective assistance of counsel because counsel failed to object to Jury Instruction No. 8, defining self-defense and to tender an instruction referencing imminent threat from other individuals:**

Instruction No. 8, as given, stated that:

One of the issues in this case is whether the use of force by the defendant against Elmund Davis was in self-defense. In this state, the use of force including the use of deadly force to protect oneself from harm is lawful in certain situations.

A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first attacks or threatens to attack another, is not justified in using force to protect himself from the counter-attack which he provoked.

In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect himself.

But a person is not permitted to use deadly force, that is, force which he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes he is in imminent danger of death or serious physical injury.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true o[r] false.

If the defendant was not the initial aggressor in the encounter with Elmund Davis.

If the defendant reasonably believed he was in imminent danger of harm from the acts of Elmund Davis and the defendant used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense.

If the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of Elmund Davis and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.

The State has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Resp. Ex. C at 53-54.

In support of Ground 8 Petitioner contends that because he was "in fear for [his] life," he "had to push Elmund off with [the ice pick] in his hand"; that he did not want to hurt the victim; that Instruction No. 8, as given, confused the jury "by misleading it"; that the instruction, as given, precluded the jury's considering the acts of the victim's girlfriend, Brenda Moore, who had the butcher knife; and that the instruction, as given, led the jury to believe that it could only consider the acts of the victim in determining whether Petitioner acted in self-defense. Petitioner contends that his counsel could have tendered a modified self-defense instruction "to expressly instruct the jury that ... it could consider not only the imminent danger of harm and imminent danger of death or serious physical injury from Mr. Davis, but also Ms. Brenda Moore, who Petitioner believed was acting in concert with Mr. Davis to kill or harm him." Doc. 13 at 35-40.

As stated above, Petitioner included in his first point in the appeal of his post-conviction relief motion an allegation that counsel was ineffective for failing to object to Jury Instruction No.

8. Resp. Ex. H at 11. The court has set forth above the Missouri appellate court's holding in regard to Petitioner's first point in the appeal of his post-conviction relief motion and its holding that to establish ineffective assistance of counsel a defendant must establish both that counsel's performance was unreasonable and that the defendant was prejudiced. As set forth in detail above, the Missouri appellate court considered Petitioner's testimony at trial including that he did not mean to hurt the victim; that Petitioner was claiming "accidental self-defense" which is not recognized in Missouri; and that Petitioner's testimony that he was unaware that the instrument he held had entered the victim's body was inconsistent with his claim of self-defense. In this regard, the Missouri appellate court stated that a self-defense argument acknowledges that a defendant acted intentionally to inflict injury upon another person and that an argument of accident involves "an unintended act." Thus, it is inconsistent to argue that conduct was undertaken in self-defense and that it was accidental. Specifically, in regard to the issue raised in Petitioner's Ground 8, the Missouri appellate court concluded that "given [Petitioner's] testimony that any stabbing was unintended, [Petitioner] did not suffer prejudice from Counsel's alleged failure to object and tender a self-defense instruction referencing imminent threat from other individuals." Resp. Ex. H at 13.

The court has set forth above federal law applicable to Petitioner's claims of ineffective assistance of counsel. The court has also set forth the standard applicable to matters of trial strategy which includes counsel's decision whether or not to object. Further, in regard to counsel's failure to object to jury instructions the Eighth Circuit holds that a habeas petitioner's constitutional rights are not violated under circumstances where "[e]ven if counsel had objected to the instructions, the [court] would have had no reason based on controlling legal authority to sustain the objection." Fields v. United States, 201 F.3d 1025, 1028 (8th Cir. 2000). Further, the court noted in Fields that no objection is necessary where the instructions as a whole "advise[] [the jury]

of the essential elements of the offenses charged." Id. (citing Miles v. Nix, 911 F.2d 146, 148 (8th Cir.1990)). "Even if counsel's failure to object to [a] submitted jury instruction fell below an objective standard of reasonableness," a habeas petitioner must still demonstrate that his defense was prejudiced by the submission by the submission of the jury instruction. Cagle v. Norris, 474 F.3d 1090, 1097 (8th Cir. 2007).

In Petitioner's case, Instruction No. 8 reflected the law of Missouri in regard to self-defense.[5] Moreover, had counsel tendered an instruction on accidental self-defense, the court would not have accepted such an instruction as it would have failed to reflect Missouri law. See Fields, 201 F.3d at 1028. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 8 is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. at 687-88; Marcrum, 509 F.3d at 502-505; Fields, 201 F.3d at 1028. Further, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case in regard to Ground 8. See 28 U.S.C. § 2254(d)(2). The court finds, therefore, that Petitioner's Ground 8 is without merit and that habeas relief on its basis should be denied.

---

[5]     The court in State v. White, 222 S.W.3d 297, (Mo. Ct. App. 2007), held:

To establish justification for self-defense, there must be substantial evidence of four elements: (1) an absence of aggression or provocation by the defendant; (2) a real or apparent necessity for the defendant to kill to save himself from an immediate danger of serious bodily injury; (3) a reasonable cause for the defendant to believe in such necessity; and (4) an attempt by the defendant to do all in his power consistent with his personal safety to avoid the danger and the need to take a life. State v. Avery, 120 S.W.3d 196, 200-01 (Mo. banc 2003). Upon evidence of such justification, "the State has the burden to prove beyond a reasonable doubt that [the defendant] did not act in lawful self-defense, and the jury must be instructed accordingly." State v. Beck, 167 S.W.3d 767, 780 (Mo. App.2005).

**Ground 9 -The trial court erred in submitting Instruction No. 6 to the jury because this instruction omitted reference to the victim's name in the definition of "sudden passion";**

**Ground 10 -The trial court erred in submitting Instruction No. 7 to the jury because this instruction omitted a definition of "serious physical injury":**

Petitioner argues in support of Ground 9, that Instruction No. 6, the second degree murder instruction, "erroneously omitted language from the mandatory paragraph defining sudden passion"; that Petitioner was prejudiced by this omission because the omission made the instruction "too narrow"; that the second degree murder instruction should have "embraced a reasonable apprehension on part of Petitioner of such an attack by Ms. Moore, who was armed with the butcher knife"; and that the term "sudden passion" should have been defined because it could have been misapplied by the jury. Doc. 13 at 41-44.

In support of Ground 10, Petitioner argues that the court erred in submitting Instruction No. 7, the voluntary manslaughter instruction; that this instruction should have included the definition of serious physical injury; and that Petitioner was prejudiced by this omission. Doc. 13 at 45.

In regard to Petitioner's Grounds 9 and 10 the Missouri appellate court held:

At trial, Defendant submitted instructions on self-defense as well as Instruction No. 6 on second-degree murder as follows:

<u>Instruction No. 6</u>

As to Count I, if you do not find the defendant Tommy Jackson guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 9, 1996, in the City of St. Louis, State of Missouri, the defendant caused the death of Elmund Davis by stabbing him, and

Second, that the defendant knew or was aware that his conduct was causing or was practically certain to cause the death of Elmund Davis, or that it was the defendant's purpose to cause serious physical injury or to cause the death of Elmund Davis and

Third, that the defendant did not do so under the influence of sudden passion arising from adequate cause, and

Fourth, that the defendant did not act in lawful self-defense as submitted in Instruction No. 8,

then you will find the defendant guilty under Count I of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by which passion arose at the time of the offense. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

If you find the defendant guilty under Count I of murder in the second degree, you will return a verdict finding him guilty of murder in the second degree.

Defendant also submitted Instruction No. 7 on voluntary manslaughter as follows:

Instruction No. 7

As to Count I, if you do not find the defendant guilty of murder in the second degree, you must consider whether he is guilty of voluntary manslaughter.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 9, 1996, in the City of St. Louis, State of Missouri, the defendant caused the death of Elmund Davis by stabbing him, and

Second, that defendant knew or was aware that his conduct was causing or was practically certain to cause the death of Elmund Davis or it was the defendant's purpose to cause the death of Elmund Davis or that it was the defendant's purpose to cause serious physical injury to or cause the death of Elmund Davis, and

Third, that defendant did not act in lawful self-defense as submitted in Instruction No. 8,

then you will find the defendant guilty under Count I of voluntary manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of voluntary manslaughter.

If you find the defendant guilty under Count I of voluntary manslaughter, you will return a verdict finding him guilty of voluntary manslaughter.

... .

... Defendant argues that submission of his Instruction No. 6 omitting reference to Victim's name in the definition of "sudden passion" violates applicable notes of use of jury instruction, constituting plain error. Defendant also claims plain error for failure to define "serious physical injury" in his Instruction No. 7.

Defendant cannot complain of instructions given at his own request. State v. Leisure, 796 S.W.2d 875, 878-79 (Mo. banc 1990) citing Section 545.030.1(16), RSMo 1994. Furthermore, Defendant failed to make timely and proper objection to either instruction as required by Rule 28.03. Rule 28.03 states that counsel shall make specific objections to instructions before the jury retires to consider the verdict. Defendant specifically stated that he had no objection to the instructions submitted. In so doing, appellate review is affirmatively waived. State v. Zelinger, 873 S.W.2d 656, 660 (Mo. App. S.D. 1994).

Notwithstanding his waiver, Defendant argues these omissions constitute plain error. Plain error may be considered only when manifest injustice or clear miscarriage of justice results. Supreme Court Rule 30.20. When reviewing for instructional error

that rises to the level of plain error, it must be clear to the appellate court that the trial court so misdirected the jury that its verdict was affected. State v. Doolittle, 898 S.W.2d 27, 29 (Mo. banc 1995).

The jury was not misdirected. The jury sent a question to the judge when it noticed a missing term in the first version of Instruction No. 6. After receiving the new version, the jury had no other questions regarding this (or any other) instruction.

Although the definition of "sudden passion" in Instruction No. 6 omitted the name of Victim or others acting with him the instruction remained reasonably clear on its face. According to the facts adduced at trial, the sole source of "provocation" arose from the fight between Defendant and Victim. The omission of Victim's name or others acting with him did not affect the jury's deliberations because no other source of provocation existed.

The definition of "serious personal injury" was omitted from Instruction No. 7. However, it was previously defined in Instruction No. 6 and there are no grounds to believe the jury was confused. The notes on use indicate the term defining "serious personal injury" need not be included in the instruction if it is defined in a separate instruction. MAI-CR3d 313.08, Note 6. Further, the jury never reached this instruction. Point denied.

Resp. Ex. D at 2-4.

Pursuant to Williams the court will consider federal law applicable to Petitioner's Grounds 9 and 10. In regard to jury instructions the Supreme Court requires that to satisfy due process a jury instruction require the state to prove beyond a reasonable doubt the elements of the crime with which a defendant is charged. Sandstrom v. Montana, 442 U.S. 510, 513 (1979); Gary v. Dormire, 256 F.3d 753, 758-59 (8th Cir. 2001). "Where the defendant alleges that jury instructions may have been erroneously interpreted, the proper inquiry under federal law 'is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Rousan v. Roper, 436 F.3d 951, 961 (8th Cir. 2006) (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). See also Gary, 256 F.3d at 759. "In conducting this analysis the jury instructions must be viewed as a whole." Rousan, 436 F.3d at 961. Additionally, where a habeas petitioner claims a jury was confused by an instruction, "federal

law requires the court to determine 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Id. at 962 (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

Petitioner contends that Instruction No. 6 omitted the Victim's name and Instruction No. 7 omitted the definition of "serious physical injury." First, both Instructions No. 6 and No. 7 required the jury to find beyond a reasonable doubt the elements of the crime with which Petitioner was charged. See Sandstrom, 442 U.S. at 513. As stated by the Missouri appellate court, Instruction No. 6 defined "serious physical injury" and there is no evidence that the jury was confused in regard to who the victim was or as to the meaning of "serious physical injury" as used in Instruction No. 7. Significantly, consistent with federal law the Missouri appellate court considered the instructions as a whole upon concluding that there was no evidence that the jury was confused or that it misinterpreted the law. See Rousan, 436 F.3d at 961-62. As such, the court finds that the decision of the Missouri appellate court in regard to the issues of Petitioner's Grounds 9 and 10 is not contrary to federal law and that it is a reasonable application of federal law. See Rousan, 436 F.3d at 961; Gary, 256 F.3d at 758-59. The court further finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See 28 U.S.C. § 2254(d)(2). The court finds, therefore, that Petitioner's Grounds 9 and 10 are without merit and that habeas relief on their basis should be denied.

## VII.
## CONCLUSION

For the reasons stated above, the court finds that all grounds upon which Petitioner seeks habeas relief in his § 2254 Petition are without merit. As such, the court finds that Petitioner's §2254 petition for habeas relief should be denied in its entirety. The court further finds that the Motion for Discovery and to Expand the Record filed by Petitioner should be denied.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** the Motion to for Discovery and to Expand the Record filed by Petitioner is **DENIED**; Doc. 14.

**IT IS FURTHER ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirely; Doc. 1

**IT IS FURTHER ORDERED** that a separate Judgment will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 10th day of  February, 2009.